# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BELVA ZOCHER-BURKE,

    Plaintiff,

  v.                                     Case No. 06-C-693

QUALITY ADDICTION MANAGEMENT, INC.,

    Defendant.

## DECISION AND ORDER

The plaintiff, Belva Zocher-Burke, filed a complaint on May 3, 2006, in Milwaukee County Circuit Court alleging that she was terminated because of her utilization of health insurance benefits and because of the possibility that she would retire on disability status and receive increased vesting in the retirement plan, in violation of § 1140 of the Employment Retirement Income and Security Act (ERISA), 29 U.S.C. §§ 1001, et. seq.. The plaintiff also alleged that she was terminated for providing information to an investigator for the State of Wisconsin in violation of Wisconsin common law and Wis. Stat. § 146.997.

The defendant removed the action to federal court and subsequently filed a motion for summary judgment. (Docket #29). The plaintiff filed a brief in response and the defendant filed a reply brief. The defendant's motion for summary judgment will be addressed herein.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to

United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

## MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and

on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings. Larsen v. City of Beloit, 130 F.3d 1278, 1282 (7th Cir.1997). "The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Federal Rules of Civil Procedure 56(e) expressly provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

(Emphasis added).

An affidavit submitted to support or oppose a summary judgment motion must be based on personal knowledge, must set forth facts that would be admissible at time of trial and must establish the affiant's competence to testify. Fed. R. Civ. P. 56(e); see Resolution Trust Corp. v. Juergens, 965 F.2d 149, 152-53 (7th Cir. 1992). "It is well settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 [7th Cir. 1998]). Affidavits based on "information and belief" -- facts that the affiant believes are true, but which the affiant does not know are true -- are not proper. Toro Co. v. Krouse, Kern & Co., Inc., 827 F.2d 155, 162-63 (7th Cir. 1987).

Moreover, a genuine issue of material fact is not shown by the mere existence of "*some* alleged factual dispute between the parties," Anderson, 477 U.S. at 247. Rather a

genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

To the extent that any proposed findings of fact do not meet the requirements of admissible evidence under Rule 56(e), they are not included in this decision. Similarly, proposed findings of fact to which an opposing party properly objected on hearsay grounds are not included in the relevant facts set forth in this decision.

**Findings of Fact**

Plaintiff Belva Zocher-Burke is a certified alcohol and drug counselor – III. She is also a licensed practical nurse. (Complaint, ¶ 3). Defendant Quality Addiction Management, Inc., employed the plaintiff from March 11, 2002, until October 17, 2005, when she was terminated. During her employment with defendant Quality Addiction Management, the plaintiff counseled and provided guidance to patients who primarily had opiate and narcotic addictions. The defendant is a privately owned medical practice that offers narcotic maintenance treatment to persons primarily addicted to opiates or narcotics.

In September 2005, at the plaintiff's residence, the plaintiff provided a medicine tray to a co-worker who was experiencing severe headaches. The medicine tray included propoxyphene, a controlled substance available only by prescription.

The co-worker with whom the plaintiff shared a prescriptive medicine has a history of chemical dependency.[1] The plaintiff had a telephone conversation with Elizabeth Gilbert, a registered nurse and the Practice Administrator for defendant Quality Addiction Management, regarding whether she had given certain medication to her co-worker. The plaintiff called Ms. Gilbert within a matter of minutes to correct her error, stating that she did not know what the

---

[1] According to the plaintiff, the co-worker later told the plaintiff that he had taken Ibuprofen 800, which is a prescription medication. (Affidavit of Belva Zocher-Burke [Plaintiff's Aff.] ¶¶ 46, 50).

co-worker had taken from the medicine tray she had provided to him. The plaintiff told Ms. Gilbert what was on the medicine tray, which included a two-year old bottle of propoxyphene.

The plaintiff was terminated because she shared prescription medication with a co-worker. (Affidavit of Charles J. Engel, M.D., ¶ 6 and ¶ 7, Exhibit A). The co-worker resigned from defendant Quality Management Addiction on October 17, 2005.

The 2003 Employee Handbook for Professional Recovery Network/Quality Addiction Management states, in part:

> It is the policy of this company that employees who engage in the sale of, possess, transfer or offer to buy or sell drugs, use or are under the influence of drugs or alcohol during working hours or on company property, or abuse prescribed drugs will be subject to disciplinary action, up to and including termination of employment.

(Affidavit of Elizabeth Gilbert [Gilbert Aff.], Exhibit C at 4). The Standards of Conduct in the Employee Manual for Quality Addiction Management requires "professional conduct" from employees; individual integrity, and conduct in accordance with the code of ethical conduct for their profession. (Gilbert Aff., Exhibit C at 9).

The plaintiff signed a Quality Addiction Management employment application which stated that she was an "at-will" employee who could be terminated for any reason at any time. She signed a receipt-acknowledgment form dated June 2, 2003, acknowledging receipt of the 2003 Employee Handbook from Professional Recovery Network/Quality Addiction Management. She also signed an acknowledgment that she read and understood the "Standards of Conduct" Guidelines of Professional Recovery Network/Quality Addiction Management.

During the course of her employment, the plaintiff had made use of the benefits available under the health insurance plan for various medical problems, including lung cancer in her left lung. (Affidavit of Belva Zocher-Burke [Plaintiff's Aff.] ¶ 5) The plaintiff told Ms.

Gilbert about her cancer condition shortly after she was hired. (Plaintiff's Aff. ¶15). The plaintiff began experiencing recurring symptoms in her left shoulder in August 2005, and began wearing a sling on her arm on an occasional basis in August 2005, and on a constant basis in September 2005. (Plaintiff's Aff. ¶ 18). At a meeting on about October 10, 2005, the plaintiff told Dr. Michael Goldstone that she was wearing the sling because she was having a great deal of pain, had made an appointment with an orthopaedic surgeon and that she might need additional surgery. (Plaintiff's Aff. ¶ 19). The plaintiff's health insurance benefits and retirement benefits were subject to ERISA.

On August 11, 2005, an investigator for the State of Wisconsin was at the defendant's clinic on West National Avenue reviewing patient charts maintained by the defendant. The plaintiff responded to the questions asked by the investigator. The plaintiff stated that there were some deficiencies in the charts, mostly involving required information which was not included in the charts. (Plaintiff's Aff. ¶¶ 29, 30).

## Analysis

Section 510 of ERISA provides in pertinent part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .." 29 U.S.C. § 1140. An employee's loss of benefits as a result of an employer's action "is not, by itself, sufficient to prove a violation of § 510. The employer must have the specific intent to deprive an employee of his plan rights." Isbell v. Allstate Ins. Co., 418 F.3d 788, 796 (citing Lindemann v. Mobil Oil Corp., 141 F.3d 290, 295 [7th Cir. 1998]).

To recover under section 510, an employee must show that "the employer terminated [her] with the specific intent to interfere with [her] ERISA rights." Salus v. GTE Directories

-6-
Case 2:06-cv-00693-PJG   Filed 09/27/07   Page 6 of 13   Document 32

Service Corp., 104 F.3d 131, 135 (7th Cir. 1997). The employee may satisfy this burden either by presenting direct evidence of interference with her protected benefits or by utilizing the now familiar burden-shifting method outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Salus, 104 F.3d at 135. The plaintiff has not presented direct evidence of interference with her protected benefits. Therefore, she is relying on the burden shifting approach.

Initially, the burden is on the plaintiff to establish a prima facie case of interference. To establish a prima facie case of interference under the burden-shifting indirect method, the plaintiff must show: 1) that she belongs to a protected class; 2) that she was qualified for her job position; and 3) that she "was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present." Salus, 104 F.3d at 135. If the plaintiff establishes all the elements of the prima facie case, the plaintiff raises an inference of interference. See Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir. 1994).

Once the plaintiff establishes a prima facie case of interference, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the challenged employment decision. Salus, 104 F.3d at 135. Finally, if the defendant produces a legitimate, nondiscriminatory reason for its employment decision, "the burden the shifts back to the plaintiff to show that the proffered explanation is pretextual and that the 'motivating factor behind the termination' was the specific intent to interfere with the plaintiff's ERISA rights." Id. at 135 (citing Meredith v. Navistar Intern. Transp. Corp., 935 F.2d 124, 127 [7th Cir 1991]).

The court of appeals for this circuit has stated that "[i]n a § 510 case, however, a court need not 'determine whether a plaintiff has established a prima facie case where a defendant

has advanced a legitimate, nondiscriminatory reason for its action." Isbell, 418 F.3d at 796 (quoting Lindemann v. Mobil Oil Corp., 141 F.3d 290, 295 [7th Cir. 1998]).

In this case, the defendant has advanced a legitimate, nondiscriminatory reason for terminating the plaintiff. The undisputed facts establish that the plaintiff, a certified alcohol and drug counselor and a licensed practical nurse, provided a medicine tray to a co-worker who was experiencing severe headaches. The co-worker had a history of chemical dependency and the medicine tray held propoxyphene, a controlled substance available only by prescription, as well as other prescription medicine. There is some dispute as to what medication the co-worker took. However, there is no dispute that whether the co-worker took Ibuprofen 800 or propoxyphene, the plaintiff offered him and he took the prescription medication.

The plaintiff asserts, however, that the defendant's legitimate, nondiscriminatory reason was pretextual and that the "motivating factor" behind her termination was the specific intent to interfere with her ERISA rights. See Salus 104 F.3d at 135. The plaintiff maintains that determining whether the motivating factor behind her termination was the specific intent to interfere with her ERISA rights presents a question of the credibility of those who made the determination to terminate her. The plaintiff raises a series of questions, such as, "Did [those who made the decision to terminate her] believe that termination was the only appropriate course and make their decision without any regard for the effect on company finances, i.e., the cost of providing employee benefits to [the plaintiff], who clearly was more expensive than most employees – and who might be adding to that cost by taking a disability retirement?" (Plaintiff's Response Brief Opposing Motion for Summary Judgment [Plaintiff's Brief] at 4 [unnumbered]). The plaintiff provides no evidentiary support for her contention. She only questions the decision maker's motives and speculates as to why she was terminated.

-8-
Case 2:06-cv-00693-PJG   Filed 09/27/07   Page 8 of 13   Document 32

Contrary to the plaintiff's contentions, for example, the undisputed facts do not establish that Ms. Gilbert commented about the plaintiff's use of health insurance having an effect on premiums or that the company attempted to get reimbursement from the plaintiff for premiums that were already paid. The plaintiff's affidavit supposedly establishing these "facts" contains inadmissible hearsay and conclusory and self-serving statements without supporting evidence. In addition, the plaintiff lacked personal knowledge as to several of her statements. As noted, in responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings or replace conclusory allegations of the complaint with conclusory allegations of an affidavit. Lujan, 497 U.S. at 888 (1990); see also, Larsen, 130 F.3d at 1282.

In this case, the undisputed facts establish that the plaintiff was terminated because she shared prescription medication with a co-worker. The plaintiff has offered no admissible evidence which would lead the trier of fact to conclude otherwise. Accordingly, the defendant's motion for summary judgment as to the plaintiff's claims brought pursuant to § 510 of ERISA will be granted.

In addition to her ERISA claims, the plaintiff also asserts that the defendant terminated her for providing information to an investigator in violation of state law and Wis. Stat. § 146.997. The defendant contends that the plaintiff's common law wrongful discharge claim fails because the plaintiff was an at-will employee and, therefore, she "could be terminated for any reason at any time." (Defendant's Brief in Support of Motion for Summary Judgment [Defendant's Brief] at 9). The defendant further asserts that although Wisconsin recognizes two exceptions to the at-will termination procedures, neither are applicable in this case. The defendant also maintains that the court has no jurisdiction over the alleged violation of Wis. Stat. § 146.997.

Wisconsin Statute § 146.997 protects healthcare workers who report violations of state or federal law or rules by healthcare providers or employees, or who report violations of any standards established by state or federal law that pose a potential risk to public health or safety. See Wis. Stats. § 146.997(2)(a)1 and 2. The statute protects employees by prohibiting disciplinary actions against healthcare employees for the good-faith reporting of violations by a healthcare provider or employee. Section 146.997(4)(a) provides:

> Any employee of a health care facility or health care provider who is subjected to disciplinary action, or who is threatened with disciplinary action, in violation of sub. (3) may file a complaint with the department under s. 106.54 (6). If the department finds that a violation of sub. (3) has been committed, the department may take such action under s. 111.39 as will effectuate the purpose of this section.

In Goggins v. Rogers Memorial Hosp., Inc., 274 Wis. 2d 754, 683 N.W.2d 510 (Wis. Ct. App. 2004), the Wisconsin Court of Appeals held that Wis. Stat. § 146.997(4)(a) does not limit an employee to the administrative remedies provided by the Wisconsin Department of Workforce Development (DWD). The court stated: "The plain language of the statute provides an employee of a health care facility with the opportunity to file a complaint with the DWD, but it is not mandatory." Id. at 517. Although § 146.997(4)(a) is not an exclusive remedy, it does not, as the plaintiff asserts, create a separate civil cause of action. Rather, a claim under § 146.997 is for administrative relief over which the DWD and not the court has jurisdiction. Accordingly, the defendant's motion for summary judgment with respect to the plaintiff's claim brought pursuant to Wis. Stat. § 146.997 will be granted.

The plaintiff also has brought an individual civil action for wrongful discharge. The undisputed facts establish that the plaintiff signed a Quality Addiction Management employment application which stated that she was an "at-will" employee who could be terminated for any reason at any time. The plaintiff apparently does not dispute that she was

-10-
Case 2:06-cv-00693-PJG   Filed 09/27/07   Page 10 of 13   Document 32

an at-will employee.[2]  Generally, at-will employees may be terminated at will by either party, for any reason or no reason, with or without cause.  See, e.g., Clay v. Horton Mfg. Co., Inc., 172 Wis.2d 349, 354, 493 N.W.2d 379, 381 (Wis. Ct. App. 1992) (citing Forrer v. Sears, Roebuck & Co., 36 Wis.2d 388, 393, 153 N.W.2d 587, 589-90 [1967]).

An at-will employee only has a cause of action for wrongful discharge if the employee establishes that the discharge was contrary to a fundamental and well-defined public policy as established by existing law.  Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 573, 335 N.W.2d 834, 840 (Wis. 1983).  Existing law includes constitutional, statutory and administrative provisions.  Tatge v. Chambers & Owen, Inc., 219 Wis.2d 99, 579 N.W.2d 217, 223 n.7 (Wis. 1998).  The Wisconsin Supreme Court emphasized that the public policy exception is "narrowly circumscribed." Brockmeyer, 335 N.W.2d at 841.  The court explained that "an employer may not require an employee to violate a constitutional or statutory provision with impunity." Id. at 840.  However, it cautioned that:

> Courts should proceed cautiously when making public policy determinations. No employer should be subject to suit merely because a discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it.

Id.

The public policy exception has been expanded to "incorporate circumstances that violate the 'spirit as well as the letter' of legislative pronouncements." Goggins, 683 N.W.2d at 514 (quoting Winkelman v. Beloit Memorial Hospital, 168 Wis.2d 12, 21, 483 N.W.2d 211, 214 [Wis.1992]).  It has further been expanded to include situations where the employee is terminated for her compliance with an affirmative obligation under law.  Hausman v. St. Croix Care Center, Inc., 214 Wis. 2d 654, 571 N.W.2d 393, 398 (Wis. 1997).

---

[2]The plaintiff did not fully respond to the defendant's motion.

In asserting a wrongful discharge claim, the plaintiff must first identify a "fundamental and well-defined public policy, and then must prove that the discharge violated that policy." Winkelman, 483 N.W.2d at 216. Determination of whether a plaintiff has identified a fundamental and well-defined public policy is a question of law. Id.; see also, Tatge, 579 N.W.2d at 223.

Here, the plaintiff did not allege that she was terminated either for refusing to violate a constitutional or statutory provision or that she was terminated for complying with an affirmative legal duty.[3] The plaintiff has not identified a fundamental and well-defined public policy. "Unless the plaintiff can identify a specific declaration of pubic policy, no cause of action has been stated." Brockmeyer, 335 N.W.2d at 840-41. However, even if the plaintiff had identified a fundamental and well-defined public policy, "the law requires a 'connection between the discharge and the public policy' to establish a claim." Goggins, 683 N.W.2d at 515 (quoting Wandry v. Bull's Eye Credit Union, 384 N.W.2d 325 [1986]). In other words, the plaintiff must show that her termination was "for fulfillment of [her] legal obligation." Goggins, 683 N.W.2d at 516.

In this case, the plaintiff has failed to demonstrate a connection between her termination and a fundamental and well-defined public policy. In fact, the undisputed facts establish that the plaintiff was terminated because she shared prescription medication with a co-worker. Accordingly, the defendant's motion for summary judgment as to the plaintiff's state law wrongful discharge claim will be granted.

---

[3]The court assumes, however, based on the allegations of the complaint that the plaintiff maintains that she was terminated for complying with an unspecified affirmative legal duty.

In sum, for the reasons stated herein, the defendant's motion for summary judgment as to the plaintiff's claims brought pursuant to ERISA and as to her claims brought pursuant to Wisconsin common law and Wis. Stats. § 146.997 will be granted.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **granted** (Docket #29).

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of September, 2007.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge